Slip Op. 20 - 121

# UNITED STATES COURT OF INTERNATIONAL TRADE

| | |
|---|---|
| FABUWOOD CABINETRY CORP., | |
| Plaintiff, | |
| and | |
| CUBITAC CABINETRY CORP., and CNC ASSOCIATES N.Y., INC., | |
| Consolidated Plaintiffs, | |
| and | |
| IKEA SUPPLY AG, | |
| Plaintiff-Intervenor, | Before: Gary S. Katzmann, Judge |
| v. | Consol. Court No. 18-00208 |
| UNITED STATES, | |
| Defendant, | |
| and | |
| COALITION FOR FAIR TRADE IN HARDWOOD PLYWOOD and MASTERBRAND CABINETS INC., | |
| Defendant-Intervenors. | |

## <u>OPINION</u>

[The court remands the Final Scope Ruling to Commerce.]

Dated: <u>August 19, 2020</u>

<u>Matthew R. Nicely</u>, Akin, Gump, Strauss, Hauer & Feld, LLP, of Washington, DC, argued for plaintiff, *Fabuwood Cabinetry Corp*. With him on the brief were <u>Julia K. Eppard</u>; and <u>Dean A. Pinkert</u> of Hughes Hubbard & Reed LLP, of Washington, DC.

<u>Richard W. Grohmann</u>, Smith & Associates, of New York, NY, for consolidated plaintiff, *Cubitac Cabinetry Corp.*

<u>Andrew T. Schutz</u>, Grunsfeld, Desiderio, Lebowitz, Silverman & Klestadt LLP, of Washington, DC, for consolidated plaintiff, *CNC Associates of N.Y., Inc.*  With him on the brief was <u>Kavita Mohan</u>.

<u>Kristen Smith</u>, Sadler, Travis & Rosenberg, P.A., of Washington, DC and New York, argued for plaintiff-intervenor, *IKEA Supply AG.*  With her on the brief were <u>Sarah E. Yuskaitis</u> and <u>Arthur K. Purcell</u>.

<u>Sonia M. Orfield</u>, Trial Attorney, Commercial Litigation Branch, Civil Division, U.S. Department of Justice, of Washington, DC, argued for defendant.  With her on the brief were <u>Joseph H. Hunt</u>, Assistant Attorney General, <u>Jeanne E. Davidson</u>, Director and <u>Tara K. Hogan</u>, Assistant Director. Of counsel was <u>Rachel Bogdan</u>, Attorney, Office of the Chief Counsel for Trade Enforcement & Compliance, U.S. Department of Commerce, of Washington, DC.

<u>Timothy C. Brightbill</u>, Wiley Rein LLP, of Washington, DC, argued for defendant-intervenors, *Coalition for Fair Trade in Hardwood Plywood* and *Masterbrand Cabinets, Inc*. With him on the brief were <u>Stephanie M. Bell</u>, <u>Tessa V. Capleto</u>, and <u>Elizabeth S. Lee</u>.

      Katzmann, Judge:  Did the decision by the United States Department of Commerce ("Commerce") to accept a scope ruling request to clarify the orders issued after an antidumping ("AD") and countervailing duty ("CVD") investigation comport with appropriate procedures?  Can the scope determinations made by Commerce be sustained?  These are the central questions in this case, arising from a dispute over a scope ruling regarding AD and CVD orders imposing duties on certain hardwood plywood products from China.  Coalition for Fair Trade in Hardwood Plywood ("Coalition"), a petitioner for the orders, and Masterbrand Cabinets Inc. ("Masterbrand"), a domestic cabinets manufacturer, (collectively, "Petitioner-Masterbrand") requested the scope ruling to confirm a proposed description of certain in-scope products, and Commerce affirmed the scope ruling request.  Fabuwood Cabinetry Corp. ("Fabuwood"), CNC Associates N.Y., Inc. ("CNC"), Cubitac Cabinetry Corp ("Cubitac"), and IKEA Supply AG ("IKEA") (collectively, the "Plaintiffs") brought this action against the United States (the "Government") to challenge

Commerce's scope ruling for what they allege were procedural defects and wrongful interpretation of the scope of the original AD and CVD orders. As discussed below, the court grants the Plaintiffs' motion for judgment on the agency record, in part, and holds that Commerce's acceptance of Petitioner-Masterbrand's scope ruling request is unsupported by substantial evidence and not in accordance with law. The court remands to Commerce for further explanation or reconsideration consistent with this opinion.

## BACKGROUND

### I.    Legal and Regulatory Framework

To empower Commerce to offset economic distortions caused by countervailable subsidies and dumping, Congress enacted the Tariff Act of 1930. Sioux Honey Ass'n v. Hartford Fire Ins. Co., 672 F.3d 1041, 1046 (Fed. Cir. 2012); ATC Tires Private Ltd. v. United States, 42 CIT __, __, 322 F. Supp. 3d 1365, 1366 (2018). Under the Tariff Act's framework, Commerce may -- either upon petition by a domestic producer or of its own initiative -- begin an investigation into potential countervailable subsidies and, if appropriate, issue orders imposing duties on the subject merchandise. 19 U.S.C. §§ 1671, 1673; Sioux Honey, 672 F.3d at 1046; ATC Tires, 322 F. Supp. 3d at 1366–67.

"When participants in a domestic industry believe that competing foreign goods are being sold in the United States at less than their fair value, they may petition Commerce to impose antidumping duties on importers." Mid Continent Nail Corp. v. United States, 725 F.3d 1295, 1297–98 (Fed Cir 2013) (citing 19 U.S.C. § 1673a(b)). If Commerce determines that "the subject merchandise is being, or is likely to be sold in the United States at less than its fair value," and the U.S. International Trade Commission ("ITC") determines that a domestic industry is injured as a result, Commerce issues an AD duty order. See 19 U.S.C. § 1673d(a), (b). Similarly, if Commerce

determines that the government of a country is providing, directly or indirectly, a countervailable subsidy with respect to the manufacture, production, or export of a class or kind of merchandise imported, sold, or likely to be sold for import, into the United States, and the ITC determines that an industry in the United States is materially injured or threatened with material injury thereby, then Commerce shall impose a CVD order upon such merchandise equal to the amount of the net countervailable subsidy. See 19 U.S.C. § 1671(a).

Once Commerce issues an order, interested parties may apply for a scope ruling to clarify the scope of the order as it relates to their particular product. 19 C.F.R. § 351.225(c). Commerce may also choose to self-initiate a scope inquiry. Id. § 351.225(b). Pursuant to 19 C.F.R. § 351.225(a), when "[i]ssues arise as to whether a particular product is included within the scope of an antidumping or countervailing duty order," Commerce may issue "scope rulings that clarify the scope of an order or suspected investigation with respect to particular products" (internal quotations omitted). Issues as to the scope of an order can arise "because the descriptions of subject merchandise contained in [Commerce's] determinations must be written in general terms," or "a domestic interested party may allege that changes to an importer product or the place where the imported product is assembled constitutes circumvention . . ." 19 C.F.R. § 351.225(a).

An interested party applying for a scope ruling must submit an application "contain[ing] the following, to the extent reasonably available to the interested party:"

> (i) A detailed description of the product, including its technical characteristics and uses, and its current U.S. Tariff Classification number;
>
> (ii) A statement of the interested party's position as to whether the product is within the scope of an order or a suspended investigation, including:
> (A) A summary of the reasons for this conclusion,
> (B) Citations to any applicable statutory authority, and
> (C) Any factual information supporting this position, including excerpts from portions of the Secretary's or the Commission's investigation, and relevant prior scope rulings.

Id. § 351.225(c).

In determining the scope of an order, Commerce will consider:

(1) The descriptions of the merchandise contained in the petition, the initial investigation, and the determinations of the Secretary (including prior scope determinations) and the Commission.

(2) When the above criteria are not dispositive, the Secretary will further consider:
      (i) The physical characteristics of the product;
      (ii) The expectations of the ultimate purchasers;
      (iii) The ultimate use of the product;
      (iv) The channels of trade in which the product is sold; and
      (v) The manner in which the product is advertised and displayed.

19 C.F.R. § 351.225(k). "[T]he plain language of an antidumping order is 'paramount' in determining whether particular products are included within its scope" and, "[i]n reviewing the plain language of a duty order, Commerce must consider the [§ 351.225(k)(1) factors]." Meridian Prod. v. United States, 890 F.3d 1272, 1277 (Fed. Cir. 2018) ("Meridian II") (internal quotation omitted). Commerce may issue a scope ruling without first initiating a scope inquiry if it can do so "based solely upon a party's application for a scope ruling and the descriptions of the subject merchandise referred to in § 351.225(k)(1)." United Steel & Fasteners, Inc. v. United States, 947 F.3d 794, 799 (Fed. Cir. 2020). If not, Commerce will initiate a scope inquiry -- "a broader inquiry as to whether a product is included within the scope of an antidumping duty order" -- to further consider the factors listed in § 351.225(k)(2). Id.; see also Shenyang Yuanda Aluminum Indus. Eng'g Co. v. United States, 776 F.3d 1351, 1354 (Fed. Cir. 2015); Sango Int'l, L.P. v. United States, 484 F.3d 1371, 1376–77 (Fed. Cir. 2007).

In issuing a scope ruling, Commerce "enjoys substantial freedom to interpret and clarify its . . . orders. But while it may interpret those orders, it may not change them." Ericsson GE Mobile Commc'ns, Inc. v. United States, 60 F.3d 778, 782 (Fed. Cir. 1995), as corrected on reh'g (Sept. 1, 1995); see also Eckstrom Indus. v. United States, 254 F.3d 1068, 1072 (Fed. Cir.

2001) ("Commerce cannot 'interpret' an antidumping order so as to change the scope of that order, nor can Commerce interpret an order in a manner contrary to its terms.") (citing Wheatland Tube Co. v. United States, 161 F.3d 1365, 1370 (Fed. Cir. 1998)).

## II.   *Procedural and Factual History*

On December 16, 2016, Commerce initiated AD and CVD investigations into hardwood plywood. Certain Hardwood Plywood From the People's Republic of China: Initiation of Less-Than-Fair-Value Investigation, 81 Fed. Reg. 91,125 (Dep't Commerce Dec. 16, 2016); Certain Hardwood Plywood From the People's Republic of China: Initiation of Countervailing Duty Investigation, 81 Fed. Reg. 91,131 (Dep't Commerce Dec. 16, 2016). Coalition filed petitions for both orders. Id. On November 16, 2017, Commerce issued its final affirmative determinations, concluding that imports of certain hardwood plywood from China were subsidized and being, or likely to be, sold in the United States at less than fair value. Countervailing Duty Investigation of Certain Hardwood Plywood Products From the People's Republic of China: Final Affirmative Determination, and Final Affirmative Critical Circumstances Determination, in Part, 82 Fed. Reg. 53,473 (Dep't Commerce Nov. 16, 2017); Certain Hardwood Plywood Products From the People's Republic of China: Final Determination of Sales at Less Than Fair Value, and Final Affirmative Determination of Critical Circumstances, in Part, 82 Fed. Reg. 53,460 (Dep't Commerce Nov. 16, 2017); Certain Hardwood Plywood Products From the People's Republic of China: Amended Final Determination of Sales at Less Than Fair Value, and Antidumping Duty Order, 83 Fed. Reg. 504 (Dep't Commerce Jan. 4, 2018) (correcting ministerial errors). In December 2017, the ITC found that U.S. industry is materially injured by reason of these subject imports. Hardwood Plywood from China, Inv. Nos. 701-TA-565 and 731-TA-1341 (Final), USITC Pub. 4747 (Dec. 2017).

On January 4, 2018, Commerce issued AD and CVD orders on certain hardwood plywood from China.  Certain Hardwood Plywood Products From the People's Republic of China, 83 Fed. Reg. 504 (Dep't Commerce Jan. 4, 2018) ("AD Order"); Certain Hardwood Plywood Products From the People's Republic of China, 83 Fed. Reg. 513 (Dep't Commerce Jan. 4, 2018) ("CVD Order") (collectively, "Orders").  The Orders applied AD and CVD duties to "hardwood and decorative plywood, and certain veneered panels."[1]  Relevant here, excluded from the scope of the Orders were:

> . . . kitchen cabinets that, at the time of importation, are fully assembled and are ready for their intended uses. Also excluded from the scope of this investigation are RTA kitchen cabinets. RTA kitchen cabinets are defined as kitchen cabinets packaged for sale for ultimate purchase by an end-user that, at the time of importation, includes (1) all wooden components (in finished form) required to assemble a finished unit of cabinetry, (2) all accessory parts (e.g., screws, washers, dowels, nails, handles, knobs, hooks, adhesive glues) required to assemble a

---

[1] The Orders in the Federal Register include the initial scope in its entirety.  In part, the Orders define hardwood and decorative plywood, and certain veneered panels, as the following:

> [H]ardwood and decorative plywood is defined as a generally flat, multilayered plywood or other veneered panel, consisting of two or more layers or plies of wood veneers and a core, with the face and/or back veneer made of non-coniferous wood (hardwood) or bamboo. The veneers, along with the core may be glued or otherwise bonded together. Hardwood and decorative plywood may include products that meet the American National Standard for Hardwood and Decorative Plywood, ANSI/ HPVA HP–1–2016 (including any revisions to that standard). For purposes of this investigation a "veneer" is a slice of wood regardless of thickness which is cut, sliced or sawed from a log, bolt, or flitch. The face and back veneers are the outermost veneer of wood on either side of the core irrespective of additional surface coatings or covers as described below. The core of hardwood and decorative plywood consists of the layer or layers of one or more material(s) that are situated between the face and back veneers. The core may be composed of a range of materials, including but not limited to hardwood, softwood, particleboard, or medium-density fiberboard (MDF). All hardwood plywood is included within the scope of this investigation regardless of whether or not the face and/or back veneers are surface coated or covered and whether or not such surface coating(s) or covers obscures the grain, textures, or markings of the wood.

AD Order at 512; CVD Order at 515.

finished unit of cabinetry, and (3) instructions providing guidance on the assembly
of a finished unit of cabinetry.

AD Order at 513; CVD Order at 516.

On April 6, 2018, Petitioner-Masterbrand filed an application for a scope ruling with

Commerce.   See Letter from Petitioner-Masterbrand to Wilbur Ross Re: Certain Hardwood

Plywood Products from the People's Republic of China: Request for Scope Ruling: Request for

Scope Ruling, P.R. 1 ("Scope Ruling Request").   Petitioner-Masterbrand asked that Commerce:

> confirm that all hardwood plywood that meets the physical description of the scope
> is included in the scope unless it meets an express exclusion, regardless of whether
> such merchandise is packaged or shipped with other items and/or has undergone
> minor processing and regardless of the U.S. Harmonized Tariff Schedule
> ("HTSUS") code under which the merchandise is imported.

Scope Ruling Request at 2.   Petitioner-Masterbrand alleged in its request that "many companies in

China are improperly using the RTA kitchen cabinet exclusion by shipping hardwood plywood

kitchen cabinet components in packages that do not include all required parts as detailed in the

RTA kitchen cabinet exclusion."   Id. at 10.   Further, Petitioner-Masterbrand alleged that the

products were "not packaged at the time of importation 'for sale for ultimate purchase by an end-

user' but instead . . . for further assembly by a distributor based in the United States."   Id.

Petitioner-Masterbrand asked Commerce to "confirm that hardwood plywood that meets the

physical description of the scope and does not meet all elements necessary to fit within an

exclusion is covered by the scope regardless of whether it is packaged and/or shipped with other

merchandise."   Id. at 13–14.

On April 12, 2018, setting a deadline of April 19, 2018,

for interested parties to comment on the scope request and a deadline of April 23, 2018, for rebuttal

comments.   Mem. from Amanda Briggs to The File re: Certain Hardwood Plywood Products from

the People's Republic of China: Deadline for Comments on the Petitioner-Masterbrand 2018

Scope Ruling Request (April 12, 2018), P.R. 6.  Commerce later extended the deadline for comments to April 23, 2018 and for rebuttal comments to April 27, 2018.  Mem. from Amanda Briggs to The File re: Certain Hardwood Plywood Products from the People's Republic of China, Petitioner-Masterbrand 2018 Scope Ruling Request Comments Extension (Apr. 16, 2018), P.R. 11.  Commerce again extended the deadline for rebuttal comments to May 1, 2018.  Mem. from Kabir Archuletta to The File re: Certain Hardwood Plywood Products from the People's Republic of China: Deadline for Rebuttal Comments on the Petitioner-Masterbrand 2018 Scope Ruling Request (April 26, 2018), P.R. 25.

By April 23, 2018, interested parties filed comments in opposition to Petitioner-Masterbrand's Scope Request.  See Letter from Husch Blackwell LLP to Sec'y of Commerce re: Hardwood Plywood Products from the People's Republic of China: Comments in Opp'n to Request for a Scope Ruling (Apr. 23, 2018), P.R. 16; Letter from deKieffer & Horgan, PLLC to Sec'y of Commerce re: Hardwood Plywood from the People's Republic of China: Comments in Opp'n to Request for Scope Ruling (Apr. 23, 2018), P.R. 18; Letter from DLA Piper LLP (US) to Sec'y of Commerce re: Scope Inquiry: Certain Hardwood Plywood Products from the PRC (A-570-051); Scope Comments of JS Int'l Inc. (Apr. 23, 2018), P.R. 20; Letter from deKieffer & Horgan, PLLC to Sec'y of Commerce re: Hardwood Plywood from the People's Republic of China: Comments in Opp'n to Request for Scope Ruling (Apr. 23, 2018), P.R. 23 ("Letter from deKieffer in Opp'n to Request for Scope Ruling").

On May 1, 2018, IKEA filed what it deemed to be rebuttal comments, but Commerce rejected them, finding that certain comments in IKEA's submission responded to the Scope Request, and thus were untimely filed, after the April 23, 2018 deadline.  Letter from Catherine Bertrand to IKEA Supply AG re: Certain Hardwood Plywood Products from the People's Republic

of China: Petitioner-Masterbrand 2018 Scope Ruling Request -- Rejection of Submission (May 21, 2018), P.R. 34.  Commerce allowed IKEA to refile its comments by May 23, 2018, after redacting the comments Commerce deemed to be outside the scope of rebuttal or explaining how these comments rebutted comments of other parties.  Id.  On May 23, 2018, IKEA resubmitted the response comments with certain information redacted at the request of Commerce.  See Letter from Sandler, Travis & Rosenberg, P.A. to Sec'y of Commerce, Re: Certain Hardwood Plywood Products from the People's Republic of China, Resubmission of Rebuttal Comments Related to Petitioner and Masterbrand's Scope Inquiry Request (May 23, 2018), P.R. 38.[2]

On June 29, 2018, Commerce asked Petitioner-Masterbrand to file additional detailed information on the scope request.  Mem. from A. Brings to The File, re: Certain Hardwood Plywood Products from the People's Republic of China: Petitioner-Masterbrand 2018 Scope Ruling Request (July 17, 2018), P.R. 45.  On July 13, 2018, Petitioner-Masterbrand filed an amended Scope Ruling Request that clarified the products for which the request for scope ruling was made. See Letter from Wiley Rein LLP to Sec'y of Commerce, Re: Certain Hardwood Plywood from the People's Republic of China: Amendment to Request for Scope Ruling (July 13, 2018), P.R. 43 ("Amended Scope Ruling Request").  The Amended Scope Ruling Request invited Commerce to determine that the following products are included in the scope of the Orders:

---

[2] IKEA also asked Commerce to reconsider its rejection of its May 1, 2018 submission.  See Letter from Sandler, Travis & Rosenberg, P.A. to Sec'y of Commerce, Re: Certain Hardwood Plywood Products from the People's Republic of China, Request to Reconsider Rejection of Rebuttal Comments Related to Petitioner and Masterbrand's Scope Inquiry Request (May 23, 2018), P.R. 39. Commerce declined to reconsider, and IKEA challenged Commerce's decision before the court.  See Letter from Catherine Bertrand to IKEA Supply AG, Re: Certain Hardwood Plywood Products from the People's Republic of China: Petitioner-Masterbrand 2018 Scope Ruling Request --Response to IKEA's Request to Reconsider (May 25, 2018), P.R. 40; IKEA's Br. at 42. At oral argument, however, IKEA informed the court that it has abandoned this challenge.  Oral Arg., Apr. 15, 2020, ECF No. 67.

Hardwood plywood, regardless of size, coating, and/or minor processing, that is not packaged for sale for ultimate purchase by a consumer end user in a package containing (i) all the wood components of the kitchen cabinet, (ii) all the hardware accessories (e.g., screws, washers, dowels, nails, handles, knobs, hooks, and adhesive glues), and (iii) written instructions needed for the consumer to assemble the kitchen cabinet. Specific products include: [h]ardwood plywood that is shipped without all of the following: (i) all wooden components of the kitchen cabinet, (ii) all required hardware, and (iii) written instruction so that the end user can assemble the cabinet; and [s]hipments of all three of the above required contents but not packaged in a manner suitable for purchase by an end-use consumer.

Hardwood plywood that has been cut-to-size, painted, laminated, stained, ultra-violet light finished, grooved, and/or covered in paper, regardless of where such processing took place; and

Hardwood plywood that has been edge banded.

Id. at 3.

Commerce officials met with Masterbrand, and Masterbrand submitted additional factual information to Commerce.  See Letter from Wiley Rein LLP to Sec'y of Commerce, Re: Certain Hardwood Plywood Products from the People's Republic of China: Masterbrand's Factual Information (July 23, 2018), P.R. 52.  Interested parties, including the Plaintiffs Fabuwood, CNC, and Cubitac, and the Plaintiff-Intervenor IKEA, filed comments in opposition to the Amended Scope Ruling Request.  See Letter from deKieffer & Horgan, PLLC to Sec'y of Commerce, Re: Hardwood Plywood from the People's Republic of China Comments in Opp'n to Request for Scope Ruling (Aug. 7, 2018), P.R. 65 ("Concerned Importers' Amended Request Comments"); Letter from Sandler, Travis & Rosenberg, P.A. to Sec'y of Commerce, Re: Certain Hardwood Plywood Products from the People's Republic of China: Comments Related to Petitioner and Masterbrand's Amendment to Request for Scope Ruling (Aug. 6, 2018) ("IKEA's Amended Request Comments"), P.R. 62.

Commerce issued the Final Scope Ruling on September 7, 2018, finding that the products as described by Petitioner-Masterbrand in the Amended Scope Ruling Request were within the

scope of the Orders.  Mem. from J. Doyle to J. Maeder, re: Final Scope Ruling For Certain

Hardwood Plywood Products From the People's Republic of China: Request by the Coalition for

Fair Trade in Hardwood Plywood and Masterbrand Cabinets Inc. (Sept. 7, 2018), P.R. 71 ("Final

Scope Ruling").  In making the determination, Commerce found that "the plain language of the

scope of the Orders is dispositive" and thus did not "analyze the criteria set forth in 19 CFR

351.225(k)(1) or the additional factors provided in 19 CFR 351.225(k)(2)."  Id. at 17, 22, 24.

On October 10, 2018, Fabuwood initiated the instant litigation challenging Commerce's

Final Scope Ruling.  Summons, ECF No.1; Compl., Nov. 9, 2018, ECF No. 10.  On December 12,

2018, IKEA intervened as Plaintiff-Intervenor, ECF No. 21, and Coalition and Masterbrand

intervened as Defendant-Intervenor, ECF No. 22.  The Plaintiffs filed the motion for judgment on

agency record on June 11, 2019.  See Pl.'s Mem. in Support of Rule 56.2 Mot. for J. on the Agency

R., ECF No. 38 ("Fabuwood's Br."); CNC's Mem. of Law in Support of Consol. Pl.'s Mot. for J.

on the Agency R., June 11, 2019, ECF No. 39, ("CNC's Br."); IKEA Supply AG's Mem. of Points

and Authorities in Support of its Rule 56.2 Mot. for J. on the Agency R., June 11, 2019, ECF No.

40 ("IKEA's Br.").   On September 4, 2019, the Government and Petitioner-Masterbrand

responded.  Def.'s Mem. in Opp'n to Pls.' Rule 56.2 Mot. for J. upon the Agency R., Sept. 4, 2019,

ECF No. 47 ("Def.'s Br."); Def.-Inter.'s Resp. to Mot. for J. on the Agency R., Sept. 4, 2019, ECF

No. 48 ("Def.-Inter.'s Br.").  The Plaintiffs replied on October 22, 2019.  Pl.'s Reply in Support

of Rule 56.2 Mot. for J. on the Agency R., ECF No. 53 ("Fabuwood's Reply"); Reply Br. in

Support of Consol. Pl.'s Mot. for J. on the Agency R., Oct. 22, 2019, ECF No. 55 ("CNC's Reply");

Pl.-Inter. IKEA Supply AG's Reply Br., Oct. 22, 2019, ECF No. 56 ("IKEA's Reply").  On April

13, 2020, the parties filed responses to the court's questions for oral argument.  Pl. Fabuwood

Cabinetry Corp.'s Resp. to Questions for Oral Argument, ECF No. 66 ("Fabuwood's Resp. to

Questions"); Consol. Pl. IKEA Supply AG's Resp. to Questions for Oral Argument, ECF No. 64

("IKEA's Resp. to Questions"); Def.'s Resp. to the Ct.'s Questions for Oral Argument, ECF No.

65 ("Def.'s Resp. to Questions"); Def.-Inter.'s Resp. to Ct.'s Questions, ECF No. 63 ("Def.-Inter.'s

Resp. to Questions").  Oral argument was held on April 15, 2020.  ECF No. 68.

## JURISDICTION AND STANDARD OF REVIEW

The court has jurisdiction over this action pursuant to 28 U.S.C. § 1581(c).  The standard

of review is set forth in 19 U.S.C. § 1516a(1)(B)(i): "[t]he court shall hold unlawful any

determination, finding or conclusion found . . . to be unsupported by substantial evidence on the

record, or otherwise not in accordance with law."

## DISCUSSION

The Plaintiffs argue that Commerce (1) impermissibly conducted the scope proceeding

below because the scope request did not include a particular product, as required by 19 C.F.R. §

351.225(c), but instead alleged circumvention; (2) acted arbitrarily by stopping at the first step of

scope analysis, incorrectly concluding that the plain language of the Orders was dispositive; and

(3) erred in including kitchen cabinets and furniture parts within the scope of the Orders.[3]

> ### I.   Commerce Failed To Address the Threshold Issue of Whether Petitioner-Masterbrand Met the Regulatory Criteria Under 19 C.F.R. § 351.225(C) for a Request for a Scope Inquiry.
>
> #### A.   Commerce Did Not Address Whether Petitioner-Masterbrand Had Provided What Was "Reasonably Available" to it.

The Plaintiffs contend that Commerce based its scope proceeding on a defective request,

as both the initial Scope Request and the Amended Scope Ruling Request lacked the specificity

required under § 351.225(c)(1) as to the product for which a scope ruling was requested.

---

[3] IKEA also argued in its opening brief that Commerce improperly rejected portions of IKEA's rebuttal comments.  IKEA abandoned this contention during oral argument, and the court thus need not address it.

Fabuwood's Br. at 12; CNC's Br. at 17; IKEA's Br. at 17.  The Plaintiffs argue that the Amended

Scope Ruling Request only "paraphras[ed] the scope language," Fabuwood's Br. at 12, failed to

"identify any specific product from any specific exporter or importer," CNC's Br. at 19, and was

"hypothetical" in nature, IKEA's Br. at 20.  The Government concedes that the original Scope

Ruling Request was deficient but argues that the Amended Scope Ruling Request is sufficiently

particular as to the products described.  Def.'s Br. at 15.[4]

The court need not decide whether the Amended Scope Ruling Request was deficient

because Commerce did not adequately address this issue.  As the Plaintiffs correctly observe,

Commerce failed to address the threshold question of whether the request was specific enough to

provide an adequate basis for a scope ruling.  See Fabuwood's Br. at 12; CNC's Br. at 18.  Nor

did Commerce address the opposing comments submitted by the Plaintiffs suggesting that the

request was not adequately supported.  See, e.g., Concerned Importers Amended Request

Comments at 20–23; IKEA's Amended Request Comments at 7–12.  In the Final Scope Ruling,

Commerce acknowledged in a footnote that certain parties commented that "the request [was]

deficient because it only generally describe[d] various alleged products, [did] not have complete

or detailed information on any specific product as imported into the United States, and [was]

insufficiently supported with actual evidence."  Final Scope Ruling at 10 n.52.  Commerce,

however, then concluded, without explanation, that the Amended Scope Ruling Request

---

[4] Petitioner-Masterbrand argues that the Amended Scope Ruling Request included all "information reasonably available" to them.  Def.-Inter.'s Resp. to Mot. for J. on the Agency R. at 17, Sept. 4, 2019, ECF No. 48 (citing 19 C.F.R. § 351.225(c)(1)).  As domestic parties, Petitioner-Masterbrand contends, they were "not privy to how, when, by whom, and in what form merchandise is imported into the United States."  Id. at 17.  To this, CNC argues that this defense does not change the fact that Petitioner-Masterbrand failed to identify the products with any particularity, which was prejudicial to the Plaintiffs.  Reply Br. in Support of Consol. Pl.'s Mot. for J. on the Agency R. at 2, Oct. 22, 2019, ECF No. 55 ("CNC's Reply").

"provide[d] all requisite information reasonably available to Petitioner-Masterbrand, and provide[d] sufficient detail regarding the products at issue for Commerce to make a final scope ruling." Id. The conclusory statement did not meet the "the obligation to address important factors raised by comments from petitioners and respondents." SKF USA Inc. v. United States, 630 F.3d 1365, 1374 (Fed. Cir. 2011).

The Government argues that, although Commerce's "discussion of the product description is of less than ideal clarity," Commerce's decision should be sustained because the agency's path "may be reasonably discerned." Def.'s Br. at 13, 15 (citing Nucor Corp. v. United States, 414 F.3d 1331, 1339 (Fed. Cir. 2005); Wheatland Tube Co., 161 F.3d at 1365). The Government also claims that, in requesting and accepting the Amended Scope Ruling Request, Commerce indicated that Petitioner-Masterbrand cured the particularity missing from the initial Scope Request in the Amended Scope Request. Id. at 15; Def.'s Resp. to Questions at 5–6.

The court disagrees. What is "readily discernible" is Commerce's conclusion that the Amended Scope Ruling Request was not deficient, but not Commerce's rationale behind this conclusion. The Final Scope Ruling did not "explain its action with sufficient clarity to permit 'effective judicial review.'" Timken U.S. Corp. v. United States, 421 F.3d 1350, 1355 (Fed. Cir. 2005). Therefore, the court holds that Commerce's Scope Ruling, made on the basis of a deficient Amended Scope Ruling Request, was not supported by substantial evidence.

Because Commerce relied on the Amended Scope Ruling Request, rather than on self-initiation, to initiate the inquiry and issue the Final Scope Ruling, the Final Scope Ruling is invalid. As is discussed above, Commerce failed to show that it accepted the Amended Scope Ruling Request based on substantial evidence. The Amended Scope Ruling Request was the source of the authority for the Final Scope Ruling. Final Scope Ruling at 1. The Government concedes that

Commerce does not have the authority to initiate a scope ruling based on a defective scope ruling request.  Def.'s Resp. to Questions at 2.  While Commerce had the authority to self-initiate scope inquiries under § 351.225(b), Def.-Inter.'s Resp. to Questions at 5, Commerce did not exercise that authority in issuing the Final Scope Ruling.  "[A] reviewing court, in dealing with a determination or judgment which an administrative agency alone is authorized to make, must judge the propriety of such action solely by the grounds invoked by the agency."  SEC v. Chenery Corp., 332 U.S. 194, 196 (1947).  Suggesting that the Final Scope Ruling should still stand because of Commerce's authority to self-initiate scope inquiries changes the basis of the authority on which Commerce relied and amounts to impermissible post-hoc rationalization.

The Defendant-Intervenor argues that "even if the scope request was defective, Commerce's failure to strictly abide by its own procedural rules would not render its scope determination invalid."  Def.-Inter.'s Resp. to Questions at 5–6 (citing Mitsubishi Polyester Film, Inc. v. United States, 41 CIT __, __, 228 F. Supp. 3d 1359, 1381 (2017); Suntec Indus. Co. v. United States, 37 CIT 1670, __, 951 F. Supp. 2d 1341, 1352 (2013)).  The court is unpersuaded by this argument.  Mitsubishi Polyester Film discusses delay in issuing the scope ruling beyond the regulatory time limit, and Suntec Industries discusses personal service requirement prior to initiating a review.  In comparison, the Amended Scope Ruling Request provided the sole legal authority for the Final Scope Ruling and directly controlled the subject of determination in the Final Scope Ruling.  In other words, the Amended Scope Ruling Request, as well as its alleged deficiency, directly affected the substance of the Final Scope Ruling.   While the issues of timeline and notice are largely procedural concerns, the validity of the Amended Scope Request is not.  Def.-Inter.'s Resp. to Questions at 5–6.  Commerce's flawed acceptance of the Amended Scope Request cannot be dismissed as a "procedural requirement," as the Defendant-Intervenor claims.

Id.  Therefore, the court remands the scope ruling to Commerce for further explanation on whether

the Amended Scope Ruling Request met the regulatory requirements.

> **B.**  ***Concerns of Circumvention Did Not Render Commerce's Final Scope Ruling Unlawful.***

The Plaintiffs claim that Petitioner-Masterbrand improperly requested a scope ruling for a

concern that should be addressed in an anticircumvention investigation, pursuant to 19 U.S.C. §

1677j.  Fabuwood's Br. at 17–18; CNC's Br. at 21; IKEA's Br. at 21–23.  In particular, IKEA

contends that all the justifications related to the scope ruling requests were based upon claims of

circumvention and evasion.  IKEA's Br. at 21–22.  When the purpose is to prevent circumvention,

IKEA argues, Commerce must conduct an anticircumvention inquiry rather than a scope ruling.

IKEA's Br. at 22–23 (citing ArcelorMittal Stainless Belg. N.V. v. United States, 694 F.3d 82, 90

(Fed. Cir. 2012); Laminated Woven Sacks Comm. v. United States, 34 CIT 906, 917, 716 F. Supp.

2d 1316, 1328 (2010); Mitsubishi Elec. Corp. v. United States, 16 CIT 730, 739, 802 F. Supp. 455,

462-63 (1992)).

The court is unpersuaded by IKEA's contention that Commerce must conduct an

anticircumvention inquiry in place of a scope ruling; the caselaw does not support such a

conclusion.  Indeed, in the cases cited by the Plaintiffs, the Federal Circuit and this court have held

that the concern of circumvention does not bear upon the legality of Commerce's scope rulings.

In ArcelorMittal Stainless Belgium N.V., the Federal Circuit rejected Commerce's scope ruling

because it unlawfully expanded the scope of an AD order, refusing to consider how the scope

ruling would prevent circumvention.  694 F.3d at 90 (holding that "if Commerce is concerned

about circumvention," it should conduct a circumvention inquiry but not "'interpret' the order in

a manner that changes its scope.").  Laminated Woven Sacks Committee denied that "the

likelihood of circumvention" should invalidate Commerce's otherwise proper scope ruling,

holding that "the issues of concern . . . in a scope ruling do not address the considerations . . . of

circumvention."  716 F. Supp. 2d at 1328; see also Mitsubishi Elec. Corp., 802 F. Supp. at 462–

63 (noting that "if Commerce is concerned about the possibility of circumvention, the appropriate

method to resolve such concern would appear to be proceedings under the provisions specifically

designed to prevent circumvention").  What these cases show is that Commerce's scope ruling,

when decided properly, cannot be defeated by the claim of circumvention, and, when decided

improperly, cannot be saved by the concern of circumvention.  No caselaw cited prevents

Commerce from pursuing, and the court from upholding, a scope inquiry just because there are

circumvention concerns.[5]

> **II.  *Commerce Failed To Conduct the Scope Ruling with Regard to the RTA Kitchen Cabinet Exclusion Pursuant to the Regulatory Requirement and Failed to Consider § 351.225(K)(1) Factors.***

As discussed, the court remands the Final Scope Ruling to Commerce for reconsideration

of its acceptance of the Amended Scope Ruling Request.  The court notes that the Plaintiffs also

challenge Commerce's determination with regard to the RTA kitchen cabinet exclusion based on

the plain language of the scope of the Orders and the lack of consideration of § 351.225(k)(1)

factors.  In the interests of judicial economy, the court addresses this issue here.

---

[5] The court recognizes that the Plaintiffs raise other grounds suggesting that the Final Scope Ruling was unlawful. In particular, the Plaintiffs argue a scope ruling could not be lawful and an anticircumvention inquiry was required because the scope request did include products that fall outside the literal scope of the Orders.  CNC's Reply at 6.  The court agrees that the product covered by the scope ruling should not fall outside "an order's literal scope"; if it does, the inquiry could only survive under the anticircumvention inquiry.  See Deacero S.A. de C.V. v. United States, 37 CIT 1457, 1461–62, 942 F. Supp. 2d 1321, 1326 (2013); U.K. Carbon & Graphite Co. v. United States, 37 CIT 1295, 1300, 931 F. Supp. 2d 1322, 1328 (2013).  As the court remands the Final Scope Ruling, the court need not reach the issue of whether the Final Scope Ruling covers products outside the literal scope of the Orders.

In the Final Scope Ruling, Commerce decided that the merchandise as characterized by

Petitioner-Masterbrand did not qualify for the RTA kitchen cabinet exclusion and was subject to

the Orders:

> [W]e find that shipments of hardwood plywood do not qualify for the RTA kitchen
> cabinet exclusion if they are comprised of hardwood plywood, regardless of size,
> coating, and/or minor processing, that is not packaged for sale for ultimate purchase
> by a consumer end user in a package containing (i) all the wood components of the
> kitchen cabinet, (ii) all the hardware accessories (e.g., screws, washers, dowels,
> nails, handles, knobs, hooks, and adhesive glues), and (iii) written instructions
> needed for the consumer to assemble the kitchen cabinet.   Specific products
> include: hardwood plywood that is shipped without all of the following: (i) all
> wooden components of the kitchen cabinet, (ii) all required hardware, and (iii)
> written instruction so that the end user can assemble the cabinet; and shipments of
> all three of the above required contents but not packaged in a manner suitable for
> purchase by an end-use consumer.

Final Scope Ruling at 17.   This description closely tracks the definition of the excluded RTA

kitchen cabinets in the scope of the Orders:

> [K]itchen cabinets packaged for sale for ultimate purchase by an end-user that, at
> the time of importation, includes 1) all wooden components (in finished form)
> required to assemble a finished unit of cabinetry, 2) all accessory parts (e.g., screws,
> washers, dowels, nails, handles, knobs, hooks, adhesive glues) required to assemble
> a finished unit of cabinetry, and 3) instructions providing guidance on the assembly
> of a finished unit of cabinetry.

AD Order at 513; CVD Order at 516.  Commerce concluded that the unambiguous scope language

of the Orders was dispositive and therefore Commerce did not need to analyze the criteria and

factors in § 351.225(k)(1) and (2).  Final Scope Ruling at 17.  Commerce acknowledged that the

RTA kitchen cabinet exclusion did not expressly address the manner of packaging nor expressly

define the term "end-user."  Id.  Commerce reasoned, however, that the plain language in the scope

of the Orders -- "packaged for sale for ultimate purchase by an end-user" and "instructions

providing guidance on the assembly of a finished unit of cabinetry" -- together made clear that

"the end-user is a retail consumer," who would require instructions for assembling a finished unit

of cabinetry.  Id.  Commerce further concluded from the requirement of what to contain "at the time of importation" in the scope of the Orders indicates that the required parts to assemble the RTA kitchen cabinets "must be packaged in a single, discrete package" such that "an end-use retail consumer would be able to open the package and assemble a specific kitchen cabinet with, and only with, the included components."  Id. at 17–18.

The Plaintiffs dispute Commerce's interpretation of the plain language of the Orders and argue that Commerce should consider the criteria in § 351.225(k)(1) prior to reaching the Final Scope Ruling, as the plain language in the Orders is not dispositive.[6]  Fabuwood's Br. at 23–25; CNC's Br. at 29–33; IKEA's Br. at 29–31.  The court agrees.  By claiming the language of the Orders to be unambiguous as to the issues submitted for determination, Commerce evaded the required step of considering the (k)(1) factors.

"Commerce's regulations at 19 C.F.R. § 351.225(k) establish its analytical path for deciding whether certain imports are covered by the scope of an antidumping or countervailing duty order."  Sunpreme Inc. v. United States, 946 F.3d 1300, 1306 (Fed. Cir. 2020) (citing Shenyang Yuanda Aluminum Indus. Eng'g Co., 776 F.3d at 1354).  Commerce cannot evade the regulatory requirement to consider § 351.225(k)(1) factors.  See Meridian II, 890 F.3d at 1277 ("In reviewing the plain language of a duty order, Commerce must consider [the § 351.225(k)(1) factors]"); Shenyang Yuanda Aluminum Indus. Eng'g Co., 776 F.3d at 1354  ("First, Commerce must consider the scope language contained in the order itself, the descriptions contained in the petition, and how the scope was defined in the investigation and in the determinations issued by

---

[6] The Plaintiffs also argue that Commerce should initiate a formal scope inquiry under § 351.225(e) and consider the § 351.225(k)(2) factors.  Fabuwood's Br. at 26; CNC's Br. at 34.  As the consideration of (k)(2) factors is contingent on the (k)(1) factors not being dispositive, Meridian Prod., LLC v. United States, 851 F.3d 1375, 1382 (Fed. Cir. 2017), the court need not decide on whether Commerce is required to consider (k)(2) factors before it has considered the (k)(1) factors.

Commerce and the ITC."); King Supply Co., LLC v. United States, 674 F.3d 1343, 1345 (Fed. Cir. 2012) ("[W]hile the plain language of the AD order is paramount, Commerce must also take into account [the § 351.225(k)(1) factors]." (internal quotations omitted)); TMB 440AE, Inc. v. United States, 43 CIT __, __, 399 F. Supp. 3d 1314, 1320 (2019) ("Commerce . . . will take into account the (k)(1) criteria in conducting a scope determination. No case has invalidated this regulatory requirement.") (citations omitted).

While the scope of the order may govern the scope ruling if the scope is unambiguous, Meridian Prod., LLC v. United States, 851 F.3d 1375, 1381 (Fed. Cir. 2017) ("Meridian I"), the court finds that the language of the Orders is ambiguous as to the issues submitted.

The court reviews de novo the question of whether the unambiguous terms of a scope control the inquiry, or whether some ambiguity exists. Meridian I, 851 F.3d at 1382. A scope is unambiguous if the terms of the scope "have a single clearly defined or stated meaning." Id. at 1381 n.7 (internal quotations omitted). To be dispositive of the issue, the terms of the scope must "be 'controlling' of the scope inquiry in the sense that they definitively answer the scope question." See Sango Int'l, L.P. v. United States, 484 F.3d 1371, 1379 (Fed. Cir. 2007). "Only a 'low threshold' must be cleared to justify a finding of ambiguity, necessitating further review." Atkore Steel Components, Inc. v. United States, 42 CIT __, __, 313 F. Supp. 3d 1374, 1380 (2018) (quoting Novosteel SA v. U.S., 284 F.3d 1261, 1270–72 (Fed. Cir. 2002)). When nothing in the record suggests that a term has a single meaning, "the plain language of the Order does not resolve the scope request." Diamond Sawblades Mfrs.' Coal. v. United States, 43 CIT __, __, 405 F. Supp. 3d 1345, 1352 (2019); see also TMB 440AE, Inc., 399 F. Supp. 3d at 1321 (holding that, because a term was undefined, Commerce was obligated to consider the (k)(1) sources before rendering its decision).

Here, the RTA kitchen cabinet exclusion language in the scope of the <u>Orders</u> does not have

"a single clearly defined or stated meaning" as to the manner of packaging or the definition of

"end-users."   <u>Meridian I</u>, 851 F.3d at 1381 n.7.   Commerce acknowledged that the exclusion

language did not explicitly address the issues as to packaging and end-users.   Final Scope Ruling

at 17 ("The RTA kitchen cabinet exclusion does not expressly address the manner in which RTA

kitchen cabinets must be packaged to be suitable for purchase nor expressly define the term 'end-

user.'").   The Plaintiffs argue in response that the plain language was ambiguous and thus not

dispositive since the key issues are not addressed by the plain language.   IKEA's Br. at 26.   The

court finds the Plaintiffs' argument persuasive.   In concluding that the scope meant "retail

consumers" by "end-users," Commerce relied on a separate clause that required assembly

instructions with the products and inferred that only retail consumers would need assembly

instructions.   Final Scope Ruling at 17.   Commerce further inferred, based on the its conclusion

that "end-users" referred to "retail consumers," that the excluded products and their components

must come in the same package.   <u>Id.</u>   Commerce's conclusions as to the manner of packaging and

definition of "end-users" were inferred and deduced from, rather than "defined or stated," in the

scope of the <u>Orders</u>.   <u>See</u> <u>Meridian I</u>, 851 F.3d at 1381

The Government argues that Commerce "lawfully provided clarity regarding 'single

packaging' and 'end-user'" based on the scope language "interpreted as a cohesive whole, which

supports only one interpretation."   Def.'s Br. at 21.   The court disagrees that the text of the scope

precluded other interpretations.   The Plaintiffs raised multiple alternative interpretations in the

comments submitted to Commerce.   For example, as CNC argues and the court agrees, the term

"for ultimate purchase by an end-user" in the scope of the <u>Orders</u> could be understood to refer to

the "ultimate purchaser," and the "ultimate purchaser" of unassembled kitchen cabinets could be

an "importer or other intermediary party" rather than a retail consumer.  CNC's Br. at 26; Letter

from deKieffer in Opp'n to Request for Scope Ruling at 15–16.  The inclusion of the required

components "at the time of importation," moreover, could mean that all required components must

come in the same shipment as the same sale, though not necessarily in the same package.  Id. at

16–17.  The plain terms of the scope cannot "definitively answer" which of these interpretations,

raised by Commerce and interested parties, is correct.

    Therefore, the court finds that the plain language of the scope of the Orders does not

sufficiently address the manner of packaging or the definition of "end-user" to allow Commerce

to reach a determination with regard to the RTA kitchen cabinets exclusion.  If the same question

as to the requirement of single packaging or sale to retail consumers arises on remand, Commerce

must address the factors listed in § 351.225(k)(1).  If the (k)(1) factors are still not dispositive of

this issue, Commerce must then consider the § 351.225(k)(2) factors, as the regulatory scheme

requires.  Meridian I, 851 F.3d at 1382; Eckstrom Indus., 254 F.3d at 1072.

## III.   *Commerce's Scope Ruling Must Be Consistent with the ITC's Injury Investigation.*

    In addition to the RTA kitchen cabinet exclusion, the Final Scope Ruling also affirmed that

the following products were covered under the scope of the Orders: "Hardwood plywood that has

been cut-to-size, painted, laminated, stained, ultra-violet light finished, grooved, and/or covered in

paper, regardless of where such processing took place; and [h]ardwood plywood that has been

edge banded."  Final Scope Ruling at 8 (citations omitted).

    The Plaintiffs contend that, because furniture and furniture parts also meet this description

in the Final Scope Ruling, such language impermissibly expanded the scope to cover furniture and

furniture parts, which fell beyond the original scope of the Orders.  Fabuwood's Br. at 29; CNC's

Br. at 35–36; IKEA's Br. at 33.  Commerce concluded that Petitioner-Masterbrand did not intend

to include finished furniture or furniture parts in the scope, but only hardwood plywood that had undergone "the minor alterations and surface coatings enumerated in their request."  Final Scope Ruling at 23.

The court need not reach this issue because the Final Scope Ruling is remanded for further explanation of Commerce's reliance on the Amended Scope Ruling Request.  The products included in the scope of an order must be covered by the underlying investigations; the scope cannot extend to a distinct, downstream product that was not a part of the underlying investigation. See 19 U.S.C. § 1673 (2018); A.L. Patterson, Inc. v. United States, 585 F. App'x 778, 786 (Fed. Cir. 2014); Trendium Pool Prods. v. United States, 43 CIT __, __, 399 F. Supp. 3d 1335, 1342 (2019); see also IKEA's Br. at 31.  The ITC investigation defines the domestic industry "to include all U.S. producers of hardwood plywood" and refers to furniture as a source of demand for hardwood plywood.  Hardwood Plywood from China at 12, 16, Nos. 701-TA-565 and 731-TA-1341 (Int'l Trade Comm'n December 2017).  On remand, Commerce is limited in its scope ruling to inclusion only of merchandise considered within the underlying ITC investigation.

## CONCLUSION

The court remands the Final Scope Ruling to Commerce for further proceedings consistent with this opinion.  On remand, Commerce shall explain its acceptance of the Amended Scope Ruling Request in light of the opposing comments submitted.  Should Commerce accept the Amended Scope Ruling Request, Commerce must look to the § 351.225(k)(1) factors in determining the products related to the RTA kitchen exclusion language in the original scope.  Any resulting scope ruling may not include products not covered by the ITC injury investigation for the Orders.  Commerce shall file with this court and provide to the parties its remand results within 90 days of the date of this order; thereafter, the parties shall have 30 days to submit briefs

addressing the remand results to the court, and the parties shall have 15 days thereafter to file reply

briefs with the court.

> **SO ORDERED.**

/s/      *Gary S. Katzmann*
Judge

Dated:  August 19, 2020
              New York, New York